UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WILLIAM GILKEY                                                                                        Plaintiff

v.                                                                                  Civil Action No. 3:23-cv-568

PADUCAH & LOUISVILLE RAILWAY,                                                          Defendant
INC.

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendant, Paducah & Louisville Railway, Inc. ("P&L") moves to dismiss Plaintiff, William Gilkey's ("Gilkey") Complaint under Rule 12(c).[1] [DE 11]. Gilkey responded, [DE 14], and P&L replied. [DE 16]. This matter is ripe. For the reasons below, P&L's motion is **DENIED**. Because the Court finds that it lacks subject-matter jurisdiction over Gilkey's claim, the Court **REMANDS** this action to Jefferson Circuit Court.

### I.   BACKGROUND

Gilkey sued P&L in Jefferson Circuit Court on August 25, 2023. [DE 1-3 at 10]. Gilkey's Verified Complaint alleges that P&L unlawfully discriminated against Gilkey based on his age in violation of the Kentucky Civil Rights Act ("KCRA"). [*Id*. at 13]; *see* KRS 344.040. Gilkey was employed by P&L for three decades, holding various positions, including Trainmaster, Senior Trainmaster, and Terminal Manager. [DE 1-3, Compl. ¶ 6]. He was not a union employee. [*Id*. at ¶ 21]. He alleges that problems began with a manager around 2016, after which his bonus was arbitrarily reduced, and raises thereafter diminished. [*Id*. at ¶¶ 7-11]. Gilkey was suspended for

---

[1] Although Counsel attached a Memorandum in support of their motion [DE 11-1], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. In the future, Counsel is advised to file a unified motion.

1

"moving a coal train into a power plant without a conductor but with an engineer." [*Id*. at ¶ 12]. Gilkey alleges that the "decision [to suspend him] was allegedly aimed at appeasing the union," but essentially that it was a pretext to discriminate against Gilkey based on his age as similar incidents "where trains were moved by managers instead of Union employees" were handled differently. [*Id*. at ¶¶ 12, 15, 16, 20]. He alleges that he was constructively discharged, and younger employees were "given raises, promotions, and replacements, contributing to a pattern of age discrimination." [*Id*. at ¶ 19].

On November 2, 2023, P&L removed the case on federal question jurisdiction. [DE 1]. Gilkey did not move to remand the case back to Jefferson Circuit Court. On December 5, 2023, P&L moved for judgment on the pleadings, arguing that Gilkey's claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), and that it is entitled to dismissal as a matter of law because Gilkey filed his Verified Complaint after the LMRA's six-month statute of limitations. [DE 11-1 at 73]. Gilkey responded, pointing out the undisputed fact that he was not a unionized employee as admitted by P&L in response to discovery, arguing that his claim is not preempted because it does not turn on or require interpretation of a collective bargaining agreement ("CBA"), and was timely filed under Kentucky state law. [DE 14 at 85-86]. P&L replied, again arguing that Gilkey's claim was preempted, and his Complaint untimely filed. [DE 16 at 100-03].

## II. STANDARDS

Fed. R. Civ. P. 12(c) provides that "a party may move for judgment on the pleadings." A court is to apply the same standard to a motion for judgment on pleadings that it applies to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)). "For purposes of a motion for judgment on the

pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). A motion for judgment on the pleadings may be "granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship,[2] federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392(1987). While 28 U.S.C. § 1331 provides a district court general federal question jurisdiction, there are also more specific jurisdiction-conferring provisions, including § 301 of the

LMRA, which both preempts certain state-law contract claims and confers federal jurisdiction over those claims. *See Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW,* 523 U.S. 653, 657(1998); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220,=(1985). Because "[§] 301 governs claims founded directly on rights created by [labor contracts], and also claims 'substantially dependent on analysis of a [labor contract],'" *Caterpillar,* 482 U.S. at 394, the Sixth Circuit has created a two-step test for determining whether a plaintiff's claims are preempted by § 301.

---

[2] P&L has premised removal on federal question jurisdiction. [*See* DE 1 at 2-3]. Because the party "seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction," and P&L does not argue diversity jurisdiction exists, the Court only evaluates whether it has federal question jurisdiction. *Certain Interested Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994); *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

> [T]he court must first "examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." A claim is independent of a labor agreement if all elements of it can be proven without interpreting that labor agreement. If the claim does not require interpreting the collective bargaining agreement terms, the court must then assess "whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." If the claim "does not invoke contract interpretation" and "is borne of state law," then it is not preempted. But if the claim does require interpretation of the agreement or the agreement created the right, the claim is preempted.

*Adamo Demolition Co. v. Int'l Union of Operating Engineers Loc. 150, AFL-CIO,* 3 F.4th 866, 873 (6th Cir. 2021).

Courts engaging in this analysis are not bound by the "well-pleaded complaint" rule. *Id.* Instead, a court "looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.* (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)). "[N]either a tangential relationship to [a CBA] nor the defendant's assertion of the contract as an affirmative defense" makes a claim dependent on a CBA. *Id.* (citing *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990)).

### III.   DISCUSSION

P&L's motion for judgment on the pleadings asserts that Gilkey's claims are preempted by § 301 of the LMRA. Because the LMRA is also the basis of federal question jurisdiction, preemption and jurisdiction are intertwined. As outlined above, to establish a federal question, the Court must find that Gilkey's state law claim either hinges on a right created solely by or involves an interpretation of a CBA. *See Adamo Demolition*, 3 F.4th at 873; *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 520 (6th Cir. 2012) (noting that the removing party has the burden of establishing federal subject-matter jurisdiction).

P&L neither argues Gilkey's claim hinges on rights created solely by a CBA, nor could it, as the claim involves rights protected by the KCRA. *See* KRS § 344.040(1) (prohibiting age

4

discrimination). Thus, the question is whether the claim will require interpreting a CBA. P&L asserts Gilkey's claim cannot be analyzed without consulting the text of P&L's CBA:

> The Plaintiff's claims of age-based discrimination are based upon the movement of trains and discipline the Plaintiff received when he moved trains with improper personnel on board. What personnel is required to move trains owned by P&L is a matter which is governed by the CBAs between P&L and its unionized workforce. Assessment of the Plaintiff's claims will unquestionably require the interpretation of a CBA.

[DE 16 at 102]. P&L also contends that Gilkey's claim requires proof that other, similarly situated officers were treated differently than Gilkey, which it claims would require the Court to consult and interpret the relevant CBA [DE 11-1 at 71].

Although any state-law claims arising from a breach of a CBA are preempted by § 301 of the LMRA, *see Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (citations omitted), if a plaintiff "can prove all of the elements of his claim" without requiring the Court to interpret the CBA's terms, "then his claim is independent of the labor agreement," and is not preempted. *DeCoe*, 32 F.3d at 216. In *Smolarek*, the court held that because one plaintiff alleged only a state claim of retaliation and did not refer to the CBA, that plaintiff's claim could be resolved without interpreting the agreement and was not "so 'inextricably intertwined with consideration of the terms of the labor contract' that this claim is preempted under § 301." *Id.* (quoting *Allis–Chalmers*, 471 U.S. at 213). The Sixth Circuit has extended *Smolarek's* reasoning to other kinds of discrimination claims. *See e.g., O'Shea v. Detroit News*, 887 F.2d 687 (6th Cir.1989) (applying *Smolarek* to age and handicap discrimination claims, holding that they were independent of a contract and were not preempted by § 301).

Because Kentucky's age discrimination statute "is specially modeled after the Federal law," claims brought under the KCRA are analyzed "in the same manner" as federal Age Discrimination in Employment Act ("ADEA") claims. *Allen v. Highlands Hosp. Corp.*, 545 F.3d

387, 394 (6th Cir. 2008) (citing *Williams v. Tyco Elec. Corp.*, 161 Fed. App'x 526, 531 n. 3 (6th Cir. 2006)); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky.1984). Under both statutes, employers "are prohibited from discharging or otherwise discriminating against any employee with respect to compensation, terms, conditions, or privileges of employment because of that individual's age." *Allen*, 545 F.3d at 393; *see* 29 U.S.C. § 623; KRS § 344.040(1). A plaintiff "must prove that age was a determining factor in the adverse action that the employer took against him or her." *Gibson v. AHF, LLC*, 495 F. Supp. 3d 499, 505 (E.D. Ky. 2020) (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993)). A plaintiff can show this in two ways. First, through direct evidence, which "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen*, 545 F.3d at 394 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Second, though circumstantial evidence, which "does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

Gilkey alleges circumstantial evidence for discrimination. After a certain manager began in 2016, he was excluded from raises and other monetary benefits [DE 1-3 at ¶11], while younger employees "were given raises, promotions and replacements," [*id*. at ¶ 12]. ]. Gilkey essentially alleges that the train incident and its relation to the union was used as a pretext to suspend him given that other employees engaged in similar behavior and were not disciplined.  [Id. at ¶¶ 12, 15, 16, 20].

To establish a *prima facie* case based on circumstantial evidence, a plaintiff must show four things: (1) [he] is a member of a protected class; (2) was qualified for the job; (3) [he] suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Sims-Madison v. Dana Com.*

6

*Vehicle Mfg., LLC.*, No. 4:20CV-00071-JHM, 2020 WL 3642268, at *2 (W.D. Ky. July 6, 2020) (quoting *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)). P&L does not contest that Gilkey has met the first three elements of his *prima facie* case. P&L argues that to analyze whether Gilkey was treated differently than similarly situated non-protected employees, "the rules found in the CBA will have to be consulted by the Court to assess why the Plaintiff received disciplinary action for moving a train in the manner with the personnel he did." [DE 16 at 101].

Whether a court must interpret the terms of a CBA to resolve a claim depends on the circumstances of the claim. For example, in *Slinker v. Jim Beam Brands Co.,* the plaintiff alleged that Jim Beam was enforcing the drug testing policy contained in its employee's CBA in a discriminatory manner. 213 F. Supp. 3d 871, 874 (W.D. Ky. 2016). The plaintiff alleged that Jim Beam enforced the CBA's policy against him—who was over forty—and failed to enforce it against other employees—who were less than forty years old. *Id*. As a result, the court in *Slinker* held that analyzing plaintiff's age-discrimination claim required interpretation of the CBA and was therefore preempted by § 301 of the LMRA. *Id*. (citing *Paluda v. ThyssenKrupp Budd Co.*, 303 Fed. App'x 305 (6th Cir. 2008)). The Sixth Circuit affirmed, holding that because the plaintiff himself alleged that Jim Beam was violating the drug testing policy in the CBA, he could not prove his claims without the Court interpreting the policy. *Slinker v. Jim Beam Brands Co*., 689 F. App'x 406, 409 (6th Cir. 2017).

Similarly, in *Paluda*, the plaintiffs alleged an automobile supplier was engaging in age discrimination in allocating benefits. 303 Fed. App'x 309. The plaintiffs alleged that their CBA outlined the requirements for certain benefits, and that they were denied certain benefits solely based on their age. *Id*. at 306-07. The Sixth Circuit held that the plaintiffs claim would require

7

proof they were similarly situated to employees who were granted benefits, "and, in turn, whether they were eligible for Mutual Consent Early Retirement Benefits as defined by the Collective Bargaining Agreement." *Id.* at 309. As a result, the court held that the age discrimination claims were substantially dependent on analysis of a CBA and were completely preempted by § 301 of the LMRA. *Id.*

Yet unlike as in *Paluda* or in *Slinker*, Gilkey neither chose "to pursue CBA remedies in his complaint, which allege[d] violations of state . . . law," nor mentioned the CBA in his Complaint. *Paul,* 701 F.3d at 522 (citing *Smolarek*, 879 F.2d at 1332–33). This is not surprising as there is no dispute that Gilkey was not a unionized employee and not subject to the CBA. Further, there seems to be no dispute about the provisions of the CBA, but rather about when it was applied by Gilkey's supervisors and when it was not. The question will be whether the reason given for Gilkey's suspension as it relates to the CBA was pretextual. In both *Slinker* and *Paluda*, the plaintiffs alleged that the CBA's provisions were not being followed; it was impossible to determine whether Jim Beam was following its drug testing policy or whether the plaintiffs in Paluda qualified for benefits without consulting and interpreting the relevant CBA's. In contrast, although Gilkey's claim may tangentially "implicate [] an employment relationship created and defined by the CBA," as to the reason P&L gave for suspending Gilkey, the standard is whether resolution of Gilkey's claim is so "inextricably intertwined" with interpretation of CBA terms to trigger complete preemption. *Paul*, 701 F.3d at 523. Gilkey's claim does "not stem from any difference about what the CBA provisions say or how they operate." *Id.* Instead, it involves a "purely factual question," which does not "require construing the collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).

Although P&L asserts that "this is not a case of the Defendant invoking preemption based on a defense in the manner prohibited by *Caterpillar Inc. v. Williams*," [DE 16 at 102], that is, in effect, the thrust of its argument—that it did not discriminate against Gilkey, but that the terms of the CBA explain the reason it disciplined him. Yet, as the Sixth Circuit noted in *Ivery v. Chrysler Corp:*

> The actions and intent of the employer are the key issues. As *O'Shea* pointed out, whether or not Defendants complied with the terms of the contract is utterly irrelevant. A defense under the contract provides no defense whatsoever to the state-law claim. Defendants could have complied to the exact and precise letter of the CBA and still be subject to liability on the state-law claim; conversely, proving a violation of the contract would not necessarily establish the state-law claim.

31 F. App'x 841, 845-46 (6th Cir. 2002) (citing *O'Shea*, 887 F.2d at 687). As mentioned above, whether Gilkey's action violated a CBA or ruffled feathers with the union, will go to P&L's defense as to the reason it suspended him. This is not a close call.

As noted above, the Sixth Circuit is clear that a defendant's defense that certain treatment was permitted or required by a CBA does not support removal to federal court. *See, e.g.*, *Smolarek*, 879 F.2d at 1333 ("The assertion of a defense requiring application of federal law, however, does not support removal to federal court."); *O'Shea*, 887 F.2d at 687 ("It is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did."); *Welch*, 922 F.2d at 293 ("[W]hile [defendant] may have a defense based on the collective bargaining contract, the defense alone is not sufficient to permit removal."); *Tisdale*, 25 F.3d at 1309 (explaining that the defense "neither invokes removal jurisdiction nor divests the state court of its normal authority to adjudicate a case that contains an issue touching upon federal law."). Accordingly, Gilkey's claim is not preempted by § 301 of the LMRA and there is no need to analyze the statute of limitations for claims subject to the LMRA.

9

This case was improperly removed, and the Court lacks federal question jurisdiction over Gilkey's claim.

Although Gilkey did not move for remand to state court, if the Court finds that it lacks subject matter jurisdiction over a case removed to federal court, remand is mandatory. *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir.1995) ("We hold, therefore, that there is a distinction in the statute [28 U.S.C. § 1447(c)] between defects in removal procedure, which are waived unless raised in a plaintiff's motion within thirty days after removal, and lack of subject matter jurisdiction, which *requires* the court to remand at any time prior to final judgment.") (emphasis added). As a result, the Court will remand the case back to Jefferson Circuit Court.

## IV.  CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) P&L's motion for judgment on the pleadings [DE 11] is **DENIED**.

(2) Because the Court finds that it lacks subject matter jurisdiction, this matter is **REMANDED** to Jefferson Circuit Court.

(3) This matter is **STRICKEN** from the Court's active docket.

August 14, 2024

Rebecca Grady Jennings, District Judge
United States District Court

cc:   Counsel of record

Jefferson Circuit Court